IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | No. 06 CR 799 |
| v. | ) | |
| | ) | Hon. Matthew F. Kennelly |
| HUSTON KLINE | ) | |
| | ) | |

NOTICE OF FILING

TO:    Mark Schneider                          Kelly Rice
       Assistant United States Attorney        U.S. Probation Officer
       219 S. Dearborn St., 5th Floor          55 E. Monroe Street, Suite 1500
       Chicago, IL 60604                        Chicago, IL 60603

        Please take notice that on this 25th day of February, 2008, the undersigned filed
the following document(s) in the above-captioned cause, a copy of which is attached
hereto.

–    HOUSTON KLINE'S SENTENCING MEMORANDUM

                                    s/Mary H. Judge
                                    MARY H. JUDGE
                                    FEDERAL DEFENDER PROGRAM
                                    55 East Monroe Street, Suite 2800
                                    Chicago, IL 60603
                                    312\621-8336

IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 06 CR 799 |
| | ) | Judge Matthew F. Kennelly |
| HUSTON KLINE, | ) | |
| Defendant. | ) | |

## HUSTON KLINE'S SENTENCING MEMORANDUM

Defendant HUSTON KLINE, by the Federal Defender Program and its

attorney, MARY H. JUDGE, respectfully submits this sentencing memorandum,

pursuant to 18 U.S.C. § 3553(a), in support of a sentence of 120 months, as that is

sufficient, but not greater than necessary, to comply with the goals of sentencing

as enumerated in 18 U.S.C. § 3553(a). In support, Mr. Kline states as follows:

I.    **FACTS**

Mr. Huston Kline is currently 29 years-old. He was born and raised in the

Chicago area, and except for short periods he spent living in Arizona, has lived

here his whole life. His upbringing was less than ideal. When he was born, his

mother and father were already divorced. He did not meet his father until he

was 16 years-old, and has seen very little of him since then. At the time of his

birth, his mother was very young, alcoholic and mentally unstable.

Consequently, Mr. Kline was primarily raised by his grandparents, Mr. and Mrs. Zerbe.

As early as preschool, teachers noticed something about Mr. Kline. One teacher suggested he be held back instead of advancing to kindergarten. His grandparents opted to send him on to kindergarten, but by first grade, he was described as "not getting along well with his peers." In second grade, at a teacher's prompting, he was referred to a doctor because he was unable to focus and was disruptive in class. He was diagnosed with Attention Deficit Hyperactivity Disorder, and was put on Ritalin. For the next two years, Mr. Kline was placed in behavior development classes. Additionally, he was teased and tormented by his peers. He had great difficulty maintaining friendships and was humiliated by classmates. He attended counseling at school in junior high to help him cope, and to help him complete assignments.

In high school, tired of getting beat up by classmates, he began to associate with school rebels and outsiders to try to fit in. He and his friends began to experiment with drugs and alcohol and not surprisingly, his grades and schoolwork were negatively impacted. The taunting at school continued, and eventually his grandparents sent him to live with his mother for one year for his own safety. He eventually returned to his grandparents' home the following

2

year, but was now a year behind in school, because his mother used him as a babysitter for his younger half-brothers instead of sending him to school.

Although unable to raise Huston Kline, his mother kept her other three boys after they were born. Consequently, Mr. Kline still suffers from the scaring caused by his mother's rejection of him. Especially when considered in light of the fact that she found a way to provide for her younger sons.

Huston Kline eventually dropped out of high school and drifted from one low paying job to the next. Continuing to self-medicate with drugs, most of his employment was short lived, either because he failed to show up for work, or because he got fired. He did not have much more success in his personal relationships. Understandably, he had extreme difficulty trusting others, especially women, yet he was desperately searching for a place to fit in. In a recent psychological evaluation, Mr. Kline was described as suffering from depression, having very low energy, feelings of worthlessness and suicidal ideation.[1]

Mr. Kline began to communicate with women via the internet. Unlike meeting women in person, meeting women in this way posed less of the usual risk of rejection or humiliation. He had a MySpace page posted on the internet.

---

[1] A Psychological and Sex Offense Risk Assessment was conducted by Michael Igaravidez, Psy.D., LPHA, and will be filed under separate cover.

3

His page included his age, background, hobbies, likes and dislikes. Through his MySpace page he began communicating with others with common interests. Sometimes this communication led to phone conversations, instant messaging, exchanging photos and even dating. Mr. Kline communicated with many adult women through his website.

In the Spring of 2006, Huston Kline received a response to his web page from a woman who indicated she was 19 years-old and shared the same interests in music. Mr. Kline eventually learned she was a minor, but continued having a relationship with her anyway. This relationship eventually became sexual, resulting in Mr. Kline's arrest in this case. Mr. Kline sent nude photos of himself to this minor, and had this minor send nude photos of herself and one of her friends to him. At the end of the summer, the minor ended the relationship and all communication with Huston Kline. He asked why, but never heard from her and never attempted to contact her after that. About one month later, Mr. Kline was arrested and charged in this case.

Significantly, at the time of his arrest he fully acknowledged having had a sexual relationship with a minor. He also admitted exchanging nude photos of himself with the minor and one of her friends. He stated that he knew what he did was wrong and that he was very sorry. Mr. Kline provided investigators

4

with complete access to search his home and computer and gave them all his passwords and access codes. A thorough search of Mr. Kline's home and computer did not result in the recovery of *any* child pornography, except those photos emailed to him in this case. Consequently, absent the exchange of these photos, the criminal conduct at issue in this case would more accurately be defined as statutory rape. Although statutory rape is a serious crime deserving of serious punishment, it is not deserving of the type of punishment reserved for those involved in the child pornography industry. For this reason, Mr. Kline objects to the Guideline calculation in the Presentence Investigation Report. Mr. Kline proposes a sentence of 120 months, the mandatory minimum sentence, as it better fulfills the statutory sentencing purposes of § 3553(a). A sentence of 360 months to life would be greater than necessary to promote respect for the law and provide just punishment, given Mr. Kline's limited criminal history, his lack of prior convictions for any type of sex crime, and given the fact that he currently falls in the moderate-low risk to re-offend category.[2] Additionally, a sentence of 120-months would provide adequate deterrence because it is substantially longer than the advisory range for state or federal statutory rape convictions.

---

[2]See Psychological and Sex Offense Risk Assessment (hereinafter "Assessment") at page 15.

## II.    A mechanical application of the guidelines overstates the criminal conduct and results in an unreasonable sentencing range.

It is without dispute that the government has the discretion to charge criminal conduct any way it sees fit. In this case the conduct at issue is, in sum, enticing a minor to engage in sexual intercourse and enticing that same minor to send nude photos of herself and a friend. Obviously, the primary harm is sex with a minor, and the secondary harm is asking the minor to email sexually explicit photos of herself and her friend.

Properly within its discretion, the government opted to charge this case in a seven-count indictment. Count one of the indictment charges Mr. Kline with having sexual intercourse with a minor, which has a ten-year mandatory minimum. And, although it can hardly be argued that having sex with a minor is the lesser harm, the indictment also contains a count that invokes a fifteen-year mandatory minimum, for enticing a minor to send nude photos. Such an odd result only makes sense when considered in the context of the child pornography industry and the serious damage it causes. Inasmuch as Mr. Kline's conduct had absolutely nothing to do with the child pornography industry, sentencing him within a Guideline range designed to target that industry is unreasonable.

The child pornography statues target the class of offenders that are arguably the most dangerous and feared in society. Mention the word pedophile

6

to any parent of a young child and the likely response will be that pedophiles should be locked up forever. With these constituents in mind, the Adam Walsh statutes were drafted to address the fear not only of pedophiles, but of the industry that arguably fuels this behavior. Harsh punishment was deemed justified for child pornographers because they were adults preying exclusively on minors for sexual gratification or financial gain or both; they exposed innocent children to an entire industry of sexual deviants and circulated those photos to millions of like-minded individuals; and because the production of child pornography often involved forceful and violent sexual acts perpetrated on children of all ages, even infants.

None of those factors are present here. Mr. Kline had an unlawful sexual relationship with a minor. During that time, they exchanged nude photos of each other. Mr. Kline also requested and received nude photos of one of her friends, who was also a minor. While technically Mr. Kline is guilty of "enticing a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing digital images," his conduct, when considered in the proper context, does not compare to the conduct committed by the class of offenders intended to be targeted by Congress and is not deserving of the harsh penalties reserved for the child pornography industry.

### III. The criminal conduct in this case more closely resembles the commission of the offense of statutory rape.

Mr. Kline is not a pedophile or an individual who is even remotely involved in the child pornography industry. Despite months of searching, no evidence was ever recovered that would suggest that Mr. Kline is a collector of child pornography.[3] He is instead an adult male who entered into an unlawful sexual relationship with a minor that did not involve force or violence. In other words, he committed the offense of state statutory rape.

The government would have lacked jurisdiction to charge this as a federal statutory rape pursuant to 18 U.S.C. § 2243(a), but it is, nonetheless, instructive to apply the statutory rape guideline, § 2A3.2, to the facts in this case.[4] Admittedly, in addition to the commission of statutory rape, Mr. Kline's conduct also involved the exchange of nude photos, conduct not considered in this guideline.

---

[3]This is remarkable, especially considering that according to an affidavit filed by the government in this case, a child pornography collector usually collects child porn in various media formats: photos, magazines, motion pictures, video tapes, books, slides, computer graphics. Collectors rarely dispose of child porn, and go to great lengths to conceal and protect it from discovery. A computer is an ideal depository for storage of child porn.

Porn can be saved or stored intentionally or unintentionally. Traces of the path of an electronic communication may be automatically stored in many places. Internet activities generally leave traces or footprints in the web cache and history files of the browser used. Such information, even if deleted, may exist indefinitely.

[4]See attached, a copy of the federal statute 18 U.S.C. § 2243(a); and the applicable Guideline.

The advisory guideline calculation for §2A3.2, Criminal Sexual Abuse of a

Minor Under the Age of Sixteen Years (Statutory Rape) is as follows:

(a) Base Offense Level:        18

(b) Specific Offense Characteristics

       (2) unduly influenced     +4

       (3) use of computer        +2

           TOTAL       24

After reducing the adjusted offense level by three levels for acceptance, the

advisory range is 41 to 51 months for a defendant in Mr. Kline's criminal history

category (Category II). As stated, this range does not include the conduct of

requesting that the minor and her friend send sexually explicit photographs to

him via email. This additional harm clearly warrants an increase in punishment.

However, it does not warrant the drastic difference in the Guideline range that

results when applied to the child pornography statute. That range is 360 months

to life. Imposition of a sentence in that range is unjust given the facts in this case,

and unreasonable in light of the following factors in 18 U.S.C. § 3553(a).

**(1)   the nature and circumstances of the offense, 18 U.S.C. § 3553(a)(1)**

Although this offense involved "consensual" sexual intercourse, it is still a

very serious offense that causes very serious damage to a minor. Mr. Kline was

9

twice the age of the minor and there is no question that he influenced her conduct. He is extremely remorseful for his actions. He immediately admitted his wrongdoing and was fully cooperative with the investigation. Because there was no physical force involved, because he did not seek out a minor to have a relationship with, and because he cared about this minor and never intended to hurt her, Mr. Kline sometimes had difficulty fully comprehending the damage he inflicted. However, he does understand that now, and especially so after reading the victim impact statement in the PSI, and discussing it with Dr. Igaravidez. Importantly, Mr. Kline is very interested in psychological therapy and understands for the first time how his upbringing may have negative lifelong ramifications on his life, if not dealt with professionally. Mr. Kline is very open to therapy and understands that the boundaries he was taught as a child, likely need to be relearned and readjusted in order for him to lead a lawful and productive life.

### (2)  Mr. Kline' history and characteristics, 18 U.S.C. § 3553(a)(1)

Significantly, Mr. Kline has very limited criminal history. Even more significant is the fact that there are no prior convictions for any type of sexual misconduct. Mr. Kline's history does, however, clearly demonstrate and confirm the need for substance abuse and mental health treatment.

10

Mr. Kline was recently tested and the most elevated Clinical Scale was indicative of an extreme degree of drug dependence. (See Assessment at 15). Further test results indicate a "High Probability" that he has a Substance Dependence Disorder. (*Id.* at 13). Most of his dependance on alcohol and drugs are a result of his maladaptive efforts to stabilize his moods. (*Id.* at 18). This is likely caused by parental abandonment and has never been adequately treated. (*Id.*). Importantly, most of the triggers of his substance abuse behavior revolve around his depression and self-loathing. This is significant because if the depression is dealt with, the substance abuse can likely be substantially curbed, if not eliminated, enabling him to become a more productive member of society.

### (3) the need to provide mental health and substance abuse treatment in the most effective manner, 18 U.S.C. § 3553(a)(2)(D)

As discussed at length in Dr. Igaravidez' report, Mr. Kline will greatly benefit from psychological as well as substance abuse treatment. (*Id.* at 20). He is in need of sexual abuse specific treatment to reduce his risk to re-offend, treatment to reduce his history of depression, and substance abuse counseling. A sentence of 120 months will provide ample time for him to participate in programs while in custody. On the other hand, a Guideline sentence will unduly delay Mr. Kline's access to out-patient treatment, a second and equally important component of his recovery.

11

**(4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct, 18 U.S.C. § 3553(a)(2)(6)**

If Mr. Kline is sentenced within the Guideline range, even if at the low-end, 360 months, an unwarranted disparity among similarly situated statutory rapists will occur. Consider that the Guideline range for federal statutory rape results in a sentence of 41 to 51 months. Also consider that Mr. Kline was charged in DuPage County for the exact conduct at issue in this case involving unlawful sex with a minor (not the photos of her or her friend). The state charges for statutory rape resulted in a sentence of 60 months imprisonment. Given these facts, the only way a Guideline sentence would not create a disparity, is if the conduct involving the exchange of nude photos warrants an upward departure of 300 months.

## IV. CONCLUSION

WHEREFORE, because Mr. Kline is not involved in the child pornography industry, because the facts in this case more closely resemble statutory rape, because Mr. Kline is in need of and amenable to treatment to put him at a low-risk of recidivism, and because a sentence of 360 months is unreasonable given the facts in this case, Mr. Kline respectfully requests that this Court impose a sentence of 120 months.

Respectfully submitted,
FEDERAL DEFENDER PROGRAM
Terence F. MacCarthy
Executive Director

By:    _____

Mary H. Judge
*Attorney for Huston Kline*

Federal Defender Program
55 East Monroe, Suite 2800
Chicago, IL 60603
312. 621. 8336

13

CERTIFICATE OF SERVICE

The undersigned, Mary Judge, an attorney with the Federal Defender Program, hereby certifies that the following document(s):

HOUSTON KLINE'S SENTENCING MEMORANDUM

was served on <u>February 25, 2008</u>, in accordance with FED.R.CIV.P.5, LR5.5, and the General Order on Electronic Case Filing (ECF), pursuant to the district court's ECF system as to ECF filers, and if any, were sent by first-class mail or by hand delivery to non-ECF filers.

By:    <u>s/Mary H. Judge</u>
MARY H. JUDGE
FEDERAL DEFENDER PROGRAM
55 East Monroe Street, Suite 2800
Chicago, IL 60603
312\621-8336

# ATTACHMENT

the person so engaging), or attempts to do so, shall be fined under this title and imprisoned for not less than 30 years or for life. If the defendant has previously been convicted of another Federal offense under this subsection, or of a State offense that would have been an offense under either such provision had the offense occurred in a Federal prison, unless the death penalty is imposed, the defendant shall be sentenced to life in prison.

**(d) State of mind proof requirement.**—In a prosecution under subsection (c) of this section, the Government need not prove that the defendant knew that the other person engaging in the sexual act had not attained the age of 12 years.

(Added Pub.L. 99–646, § 87(b), Nov. 10, 1986, 100 Stat. 3620, and amended Pub.L. 103–322, Title XXXIII, § 330021(1), Sept. 13, 1994, 108 Stat. 2150; Pub.L. 104–208, Div. A, Title I, § 101(a) [Title I, § 121, subsection 7(b)], Sept. 30, 1996, 110 Stat. 3009–31; Pub.L. 105–314, Title III, § 301(a), Oct. 30, 1998, 112 Stat. 2978; Pub.L. 109–162, Title XI, § 1177(a)(1), (2), Jan. 5, 2006, 119 Stat. 3125; Pub.L. 109–248, Title II, §§ 206(a)(1), 207(2), July 27, 2006, 120 Stat. 613, 615.)

### HISTORICAL AND STATUTORY NOTES

**Codifications**

Identical provision was enacted by Pub.L. 99–654, § 2, Nov. 14, 1986, 100 Stat. 3660.

**Effective and Applicability Provisions**

**1986 Acts.** Pub.L. 99–646, § 87(e), Nov. 10, 1986, provided that: "This section and the amendments made by this section [enacting this chapter; amending sections 113(a), (b), 1111(a), 1153, and 3185(12) of this title, sections 300w–3(a)(1)(G), 300w–4(c)(6), and 9511 of Title 42, The Public Health and Welfare, and section 1472(k)(1) of Title 49, Transportation]; and repealing chapter 99 (sections 2031 and 2032 of this title] shall take effect 30 days after the date of the enactment of this Act [Nov. 10, 1986]."

[Effective Date provision similar to Pub.L. 99–646, § 87(e), was enacted by Pub.L. 99–654, § 4, Nov. 14, 1986, 100 Stat. 3664.]

**Short Title**

**1996 Amendments.** Pub.L. 104–208, Div. A, Title I, § 101(a) [Title I, § 121, subsec. 7(a)], Sept. 30, 1996, 110 Stat. 3009–31, provided that: "This section [probably should be this subsection, which amended this section and section 2243 of this title] may be cited as the 'Amber Hagerman Child Protection Act of 1996'."

**1986 Amendments.** Pub.L. 99–646, § 87(a), Nov. 10, 1986, provided that: "This section [enacting this chapter; amending sections 113(a), (b), 1111(a), 1153, and 3185(12) of this title, sections 300w–3(a)(1)(G), 300w–4(c)(6), and 9511 of Title 42, The Public Health and Welfare, and section 1472(k)(1) of Title 49, Transportation; repealing chapter 99 (sections 2031 and 2032) of this title; and enacting note provision under this section] may be cited as the 'Sexual Abuse Act of 1986'."

[Short Title provision similar to Pub.L. 99–654, § 87(a), was enacted by Pub.L. 99–654, § 1, Nov. 14, 1986, 100 Stat. 3660.]

### § 2242. Sexual abuse

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly—

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

(2) engages in a sexual act with another person if that other person is—

(A) incapable of appraising the nature of the conduct; or

(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

(Added Pub.L. 99–646, § 87(b), Nov. 10, 1986, 100 Stat. 3621, and amended Pub.L. 103–322, Title XXXIII, § 330021(1), Sept. 13, 1994, 108 Stat. 2150; Pub.L. 109–162, Title XI, § 1177(a)(3), Jan. 5, 2006, 119 Stat. 3125; Pub.L. 109–248, Title II, §§ 205, 207(2), July 27, 2006, 120 Stat. 613, 615.)

### HISTORICAL AND STATUTORY NOTES

**Codifications**

Identical provision was enacted by Pub.L. 99–654, § 2, Nov. 14, 1986, 100 Stat. 3661.

**Effective and Applicability Provisions**

**1986 Acts.** Section effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

### § 2243. Sexual abuse of a minor or ward

**(a) Of a minor.**—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in a sexual act with another person who—

(1) has attained the age of 12 years but has not attained the age of 16 years; and

(2) is at least four years younger than the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

**(b) Of a ward.**—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or

pursuant to a contract or agreement with the Attorney General, knowingly engages in a sexual act with another person who is—

    (1) in official detention; and

    (2) under the custodial, supervisory, or disciplinary authority of the person so engaging;

or attempts to do so, shall be fined under this title, imprisoned not more than 15 years, or both.

**(c) Defenses.—(1)** In a prosecution under subsection (a) of this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the defendant reasonably believed that the other person had attained the age of 16 years.

**(2)** In a prosecution under this section, it is a defense, which the defendant must establish by a preponderance of the evidence, that the persons engaging in the sexual act were at that time married to each other.

**(d) State of mind proof requirement.**—In a prosecution under subsection (a) of this section, the Government need not prove that the defendant knew—

    (1) the age of the other person engaging in the sexual act; or

    (2) that the requisite age difference existed between the persons so engaging.

(Added Pub.L. 99–646, § 87(b), Nov. 10, 1986, 100 Stat. 3621, and amended Pub.L. 101–647, Title III, § 322, Nov. 29, 1990, 104 Stat. 4818; Pub.L. 104–208, Div. A, Title I, § 101(a) [Title I, § 121, subsection 7(c)], Sept. 30, 1996, 110 Stat. 3009–31; Pub.L. 105–314, Title III, § 301(b), Oct. 30, 1998, 112 Stat. 2978; Pub.L. 109–162, Title XI, § 1177(a)(4), (b)(1), Jan. 5, 2006, 119 Stat. 3125; Pub.L. 109–248, Title II, § 207, July 27, 2006, 120 Stat. 615.)

### HISTORICAL AND STATUTORY NOTES

**Codifications**

    Identical provision was enacted by Pub.L. 99–654, § 2, Nov. 14, 1986, 100 Stat. 3661.

**Effective and Applicability Provisions**

    **1986 Acts.** Section effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

## § 2244.   Abusive sexual contact

    **(a) Sexual conduct in circumstances where sexual acts are punished by this chapter.**—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in or causes sexual contact with or by another person, if so to do would violate—

    (1) subsection (a) or (b) of section 2241 of this title had the sexual contact been a sexual act, shall

be fined under this title, imprisoned not more than ten years, or both;

    (2) section 2242 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than three years, or both;

    (3) subsection (a) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both;

    (4) subsection (b) of section 2243 of this title had the sexual contact been a sexual act, shall be fined under this title, imprisoned not more than two years, or both; or

    (5) subsection (c) of section 2241 of this title had the sexual contact been a sexual act, shall be fined under this title and imprisoned for any term of years or for life.

    **(b) In other circumstances.**—Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the Attorney General, knowingly engages in sexual contact with another person without that other person's permission shall be fined under this title, imprisoned not more than two years, or both.

    **(c) Offenses involving young children.**—If the sexual contact that violates this section (other than subsection (a)(5)) is with an individual who has not attained the age of 12 years, the maximum term of imprisonment that may be imposed for the offense shall be twice that otherwise provided in this section.

(Added Pub.L. 99–646, § 87(b), Nov. 10, 1986, 100 Stat. 3622, and amended Pub.L. 100–690, Title VII, § 7058(a), Nov. 18, 1988, 102 Stat. 4403; Pub.L. 103–322, Title XXXIII, § 330016(1)(K), Sept. 13, 1994, 108 Stat. 2147; Pub.L. 105–314, Title III, § 302, Oct. 30, 1998, 112 Stat. 2979; Pub.L. 109–162, Title XI, § 1177(a)(5), (b)(2), Jan. 5, 2006, 119 Stat. 3125; Pub.L. 109–248, Title II, §§ 206(a)(2), 207(2), July 27, 2006, 120 Stat. 613, 615.)

### HISTORICAL AND STATUTORY NOTES

**Codifications**

    Identical provision was enacted by Pub.L. 99–654, § 2, Nov. 14, 1986, 100 Stat. 3661.

**Effective and Applicability Provisions**

    **1986 Acts.** Section effective 30 days after Nov. 10, 1986, see section 87(e) of Pub.L. 99–646, set out as a note under section 2241 of this title.

## § 2245.   Offenses resulting in death

    **(a) [1] In general.**—A person who, in the course of an offense under this chapter, or section 1591, 2251, 2251A, 2260, 2421, 2422, 2423, or 2425, murders an individual, shall be punished by death or imprisoned for any term of years or for life.

### §2A3.2.    Criminal Sexual Abuse of a Minor Under the Age of Sixteen Years (Statutory Rape) or Attempt to Commit Such Acts

(a)    Base Offense Level:  **18**

(b)    Specific Offense Characteristics

    (1)    If the minor was in the custody, care, or supervisory control of the defendant, increase by **4** levels.

    (2)    If (A) subsection (b)(1) does not apply; and (B)(i) the offense involved the knowing misrepresentation of a participant's identity to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct; or (ii) a participant otherwise unduly influenced the minor to engage in prohibited sexual conduct, increase by **4** levels.

    (3)    If a computer or an interactive computer service was used to persuade, induce, entice, or coerce the minor to engage in prohibited sexual conduct, increase by **2** levels.

(c)    Cross Reference

    (1)    If the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse (as defined in 18 U.S.C. § 2241 or § 2242), apply §2A3.1 (Criminal Sexual Abuse; Attempt to Commit Criminal Sexual Abuse).  If the victim had not attained the age of 12 years, §2A3.1 shall apply, regardless of the "consent" of the victim.

*Commentary*

*Statutory Provision:  18 U.S.C. § 2243(a).  For additional statutory provision(s), see Appendix A (Statutory Index).*

*Application Notes:*

*1.    Definitions.—For purposes of this guideline:*

*"Computer" has the meaning given that term in 18 U.S.C. § 1030(e)(1).*

*"Interactive computer service" has the meaning given that term in section 230(e)(2) of the Communications Act of 1934 (47 U.S.C. § 230(f)(2)).*

*"Minor" means (A) an individual who had not attained the age of 16 years; (B) an individual, whether fictitious or not, who a law enforcement officer represented to a participant (i) had not attained the age of 16 years, and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (C) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 16 years.*

– 58 –