UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| UNITED STATES OF AMERICA | No. 06 CR 799 |
|---|---|
| v. | Hon. Matthew F. Kennelly |
| HUSTON KLINE | |

**RESPONSE TO DEFENDANT HUSTON KLINE'S
<u>MOTION FOR REDUCED SENTENCE</u>**

Defendant Huston Kline has filed a motion asking this Court to reduce his sentence of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and order his immediate release, relying in part on the threat posed by the COVID-19 pandemic. As explained below, the Court should deny defendant's motion because he has failed to establish extraordinary and compelling reasons warranting release or that release would be consistent with the applicable Guidelines policy statement or the factors set forth in 18 U.S.C. § 3553(a).

## BACKGROUND

### *Offense and Procedural History*

On October 30, 2006, the defendant was charged, by complaint, with one count of employing, using, persuading, inducing, enticing, and coercing a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing a visual image of the conduct, in violation of 18 U.S.C. § 2251(a). Dkt. 1. Subsequently, on November 28, 2006, the defendant was indicted in a seven count indictment for (1) using a facility and means of interstate and foreign commerce to persuade, induce, and entice a minor under the age of eighteen to engage in sexual activity, in violation

of 18 U.S.C. § 2422(b); (2) four counts of employing, using, persuading, inducing, enticing, and coercing a minor under the age of eighteen to engage in sexually explicit conduct for the purpose of producing a visual image of the conduct, in violation of 18 U.S.C. § 2251(a); and (3) two counts of receiving child pornography, in violation of 18 U.S.C. § 2252A1(a)(2)(A). Dkt. 15.

On November 21, 2007, pursuant to a written plea agreement, the defendant pleaded guilty to Count One of the indictment. Dkts. 40, 41. As part of his plea, the defendant admitted that, from April or May of 2006 through September 2006, he, then a 28 year old male, used MySpace, a social media website, to persuade, induce, and entice a 13 year old girl to engage in sexual activity with him.[1] The defendant admitted that through MySpace, he told the 13 year old girl that he wanted to have sex with her and requested that she send him sexually explicit photos of herself and private areas. The defendant then picked her up on three separate occasions from her middle school, took her back to his home, and engaged in sexual activity with the 13 year old girl. The defendant also admitted that he sought sexually explicit images of and sought to have sex with the 13 year old friend of the original 13 year old girl. Dkt. 41 at 2-5. On April 8, 2008, the district court imposed a sentence of 240 months' imprisonment. Dkt. 51, 53.

---

[1] The victim turned 14 years old sometime in August of 2006.

*The BOP's Response to COVID-19*

As reported on the BOP's website, in January 2020, the BOP began a course of action to respond to the spread of COVID-19.[2] Phase One of this course of action included the creation of an agency task force working in conjunction with subject matter experts from the Center for Disease Control and Prevention ("CDC") and the World Health Organization to review guidance about best practices to mitigate transmission. *Id.* On March 13, 2020, as part of Phase Two of the course of action, the BOP began implementing various measures to mitigate the spread of the virus. These measures included suspending social visits, in-person legal visits, all inmate movement, and staff travel. The BOP also began implementing procedures to quarantine and screen inmates and staff for the virus, which included screening all newly arriving inmates for exposure risk factors and symptoms, quarantining asymptomatic inmates with exposure risk factors, and isolating and testing symptomatic inmates with exposure risk factors. *Id.*

Subsequent phases of the BOP's response included the authorization of inmate movement in order to avoid overcrowding at BOP facilities. However, such movements were limited to inmates who had been in custody for more than fourteen days and who had been subjected to exit screening to ensure that the prisoner had no COVID-19 symptoms (fever, cough, shortness of breath) and a temperature less than

---

[2] Federal Bureau of Prisons COVID-19 Action Plan, March 13, 2020, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited November 16, 2020).

100.4 F.[3] Subsequent phases of the course of action included the quarantine and isolation of all new inmates with asymptomatic inmates being quarantined for fourteen days and symptomatic inmates being isolated until testing negative for COVID-19, modifying operations to maximize social distancing, the maximization of telework for staff members, and conducting inventory reviews of all cleaning and medical supplies to ensure ample supplies were on hand and ready to be distributed as necessary at BOP facilities.[4] A modified operations plan has updated the procedures.[5]

On April 1, 2020, as part of Phase 5 of its COVID-19 action plan, the BOP secured all inmates to their assigned cells or quarters to decrease the spread of the virus. On April 13, 2020, BOP extended the implementation of Phase 5 of its COVID 19 plan until May 18, 2020. Further details and updates of BOP's modified operations are available to the public on the BOP website at a regularly updated resource page: www.bop.gov/coronavirus/index.jsp.

**ARGUMENT**

**The Defendant Is Ineligible for Relief Under Section 3582(c)(1).**

---

[3] Updates to BOP COVID-19 Action Plan, March 19, 2020, https://www.bop.gov/resources/news/20200319_covid19_update.jsp%20 (last visited November 16, 2020).
[4] Bureau of Prisons Update on COVID-19, March 24, 2020, https://www.bop.gov/resources/news/pdfs/20200324_bop_press_release_covid19_update.pdf (last visited November 16, 2020); COVID-19 Action Plan: Phase Five, March 31 2020, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last visited November 16, 2020).
[5] Bureau of Prisons Modified Operations, Updated October 8, 2020 https://www.bop.gov/coronavirus/covid19_status.jsp (last visited November 16, 2020).

The Court should deny defendant's motion because defendant has not established an "extraordinary and compelling" reason for his release. Even if he had, ordering defendant's release would be inconsistent with applicable Guidelines policy statements and the factors set forth in 18 U.S.C. § 3553(a).

**I.     Legal Standard**

As amended by Section 603(b) of the First Step Act of 2018, Pub. L. 115-391, Title 18, United States Code, Section 3582(c)(1)(A) provides:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> > (i) extraordinary and compelling reasons warrant such a reduction; or
> >
> > (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Direct of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

5

Under this statute, in addition to finding "extraordinary and compelling" reasons for the reduction, the Court must find that a sentence reduction is consistent with applicable policy statement issued by the U.S. Sentencing Commission.

Pursuant to Congress's directive, the Sentencing Commission promulgated USSG § 1B1.13, which sets forth the Sentencing Commission's policy statement with respect to § 3582(c)(1)(A). Consistent with § 3852(c)(1)(A)(i), § 1B1.13 provides that a court may reduce a term of imprisonment, after considering the § 3553(a) factors, if three criteria are satisfied: (1) "extraordinary and compelling reasons warrant the reduction"; (2) "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (3) the reduction is consistent with the factors set forth in 18 U.S.C. § 3553, to the extent relevant. *Id.*

Thus, in order to obtain relief under § 3582(c)(1)(A)(i), defendant must show that: (1) he has requested relief from the BOP and exhausted any administrative appeals in that process; (2) there exist extraordinary and compelling reasons that warrant a sentence reduction; (3) the requested reduction is consistent with the policy statements issued by the sentencing commission in Guideline §1B1.13, including the requirement that "the defendant is not a danger to the safety of any other person or to the community"; and (4) the reduction is warranted in light of the factors listed in 18 U.S.C. § 3553.

## II. Defendant Has Complied With § 3582(c)(1)(A)'s Exhaustion Requirement.

As indicated above, under 18 U.S.C. § 3582(c)(1)(A), a defendant is free to bring a motion for compassionate release after he has exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf, or 30 days have elapsed since the receipt of such a request by the warden of the defendant's facility, whichever is earlier.

On or about July 31, 2020, defendant submitted an administrative request for a reduction of sentence with the warden of the institution in which he is housed. Defendant's request was denied on October 16, 2020. Because more than 30 days have elapsed since defendant's request was received by the warden, defendant has exhausted his administrative remedies as required by §3582(c)(1).

## III. Defendant Has Not Established That "Extraordinary and Compelling Reasons" Warrant a Sentence Reduction or His Release.

Contrary to defendant's contention, he has not established that he is eligible for relief under § 3852(c)(1)(A)(i), as he has not shown that, "after considering the factors set forth in section 3553(a) . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).

As Congress expressly directed, the Sentencing Commission issued policy statements defining the "extraordinary and compelling reasons" that might warrant a sentence reduction under § 3582(c)(1)(A)(i). See 28 U.S.C. § 994(t) ("The Commission, in promulgating general policy statements regarding the sentencing

modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). Application Note 1 to Guideline § 1B1.13 identifies the factors that may constitute "extraordinary and compelling reasons" for a sentence reduction. As reflected in Application Note 1, the Sentencing Commission concluded that "extraordinary and compelling reasons" are limited to the following four scenarios:

> 1. The defendant suffered from a "terminal illness" or his physical or mental condition "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13 cmt. n.1(A).
>
> 2. The defendant was at least 65 years old, experiencing a serious deterioration in physical or mental health because of the aging process, and served the lesser of 10 years or 75% of his sentence. *Id.* § 1B1.13 cmt. n.1(B).
>
> 3. The defendant's family circumstances include either the death or incapacitation of the caregiver of the defendant's minor child or minor children or the incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner. *Id.* § 1B1.13 cmt. n.1(C).

4. "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13 cmt. n.1(D).

Guideline 1B1.13, cmt. n. 1.

The changes to 18 U.S.C. § 3582(c)(1)(A) made by the First Step Act altered the procedure through which compassionate release could be sought, that is, by allowing defendants to bring their requests to court after exhausting their administrative remedies, but they did not alter the grounds for granting relief.

Here, defendant asserts that he has demonstrated "extraordinary and compelling reasons" for a sentence reduction based on the COVID-19 pandemic and his increased risk of severe illness should he contract the virus, based on the fact that he suffers from obesity and high blood pressure.

Defendant's medical records confirm that he suffers from obesity (as defined by current CDC guidance) and high blood pressure. *See* Defendant's Medical Records at 5-6. With respect to obesity, defendant's records reflect that, as of September 24, 2020, his body mass index ("BMI") was recorded as 32—two points above the lower threshold of the CDC's definition of obesity (having a BMI of 30 or over).[6] His records reflect a diagnosis of hypertension, but also indicate that his condition is under "excellent control on current meds." *Id.* at 7. Current CDC guidance identifies obesity as a condition that increases the risk of severe illness from COVID-19.[7] The guidance does not identify hypertension as such a condition; instead it states that, based on

---

[6] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#obesity (last visited Nov. 17, 2020).

[7] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Nov. 17, 2020).

the limited data and information currently available, hypertension "might" increase this risk.

Thus, in light of the COVID-19 pandemic, and the fact that defendant suffers from at least one medical condition—obesity—identified by the CDC as a COVID-19 risk factor, the government agrees that defendant has established "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover," U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I), in that obesity can lead to type II diabetes, which would substantially diminish a defendant's ability to provide self-care against serious injury or death as a result of COVID-19, within the environment of a correctional facility. Accordingly, defendant has established an extraordinary and compelling reason for release.

However, this showing does not in itself entitle defendant to relief under 18 U.S.C. § 3582(c)(1). Pursuant to the statute and the applicable policy statement, the Court must also consider whether defendant poses a danger to the community, as well as all other pertinent § 3553(a) factors, including defendant's history and characteristics, the risk of recidivism he poses, the time remaining on his sentence, the quality of his release plan, and the impact of BOP's efforts to maintain the safety of inmates. As discussed below, these factors demonstrate that early release of the defendant would be inconsistent with the applicable policy statement and the sentencing factors set forth in 18 U.S.C. § 3553(a).

With respect to defendant's health, although defendant's medical records reflect that he suffers from at least one medical condition that increases his risk of severe illness should he contract COVID-19, he is at the bottom of the range identified by the CDC as "obese," and therefore it is questionable whether it is accurate to say that defendant is unlikely to recover from this condition. Moreover, defendant's medical records reflect that his blood pressure is being well controlled by the health professionals at USP Marion and medication. Defendant is currently housed at USP Marion, a facility which has recently experienced an outbreak of COVID-19, but which appears to be bringing the spread of the virus under control. Specifically, according to the BOP, Marion USP currently has 108 (of more than 1,000) inmates and 11 staff members with active staff members who have active cases, and 186 inmates and 11 staff members who have recovered from the virus. *See* https://www.bop.gov/coronavirus/ (last visited Nov. 17, 2020). These figures indicate that the efforts of BOP personnel to limit the spread of the virus are having a positive impact.

Moreover, defendant's offense could hardly be more serious, and it is clear that defendant poses a strong risk of recidivism and a resulting danger to the community. When he was 28 years old, the defendant preyed on a 13 year old victim without any regard for the lasting impact his behavior would have on her life. He picked her up from her *junior high school* to engage in an illegal sexual relationship with her. He had her and her friend send him graphic images of their private areas and even went so far as to suggest that she and her 13 year old friend should have sex with him.

11

Defendant's behavior was abhorrent and his release would endanger the victims in this case and other minor aged girls.

The defendant has approximately three years remaining on his sentence (according to the BOP website he is scheduled for release on November 15, 2023) and should serve the remaining time on his sentence incarcerated in a federal institution. Additionally, defendant has not presented the court with any plan should he be released. Accordingly, a sentence reduction in this case would deprecate the seriousness of defendant's criminal conduct, and undermine the sentence's purposes of affording deterrence and protecting the public.

## CONCLUSION

For the reasons set forth above, the government respectfully submits that defendant's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), should be denied.

Date: November 17, 2020

                                        Respectfully submitted,

                                        JOHN R. LAUSCH, JR.
                                        United States Attorney

By:    */s/ Albert Berry III*
        ALBERT BERRY III
        Assistant United States Attorney
        219 S. Dearborn Street, 5th Floor
        Chicago, Illinois 60604
        (312) 886-7855